# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAAVEED CHARLEAU, on behalf of himself and all others similarly situated, | : : : | ELECTRONICALLY FILED ON July 20, 2020 |
| Plaintiff, | : : | Case No. 1:20-cv-00879-JEJ |
| v. | : : | Hon. John E. Jones, III, Chief Judge |
| S-L DISTRIBUTION COMPANY, LLC, | : : | |
| Defendant. | : : | |

## AMENDED COMPLAINT – CLASS ACTION

Daaveed Charleau ("Plaintiff") brings this class action lawsuit against S-L Distribution Company, LLC ("Defendant") for violations of the Massachusetts Wage Act ("MWA"), Mass. Gen. Laws ch. 149, §§ 148, et seq.

## JURISDICTION AND VENUE

1. This court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(d)(2)(A) and 28 U.S.C. § 1332(a), the Class Action Fairness Act ("CAFA") and federal diversity jurisdiction statute.

2. There are at least 100 members of the proposed class.

3. This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

4.     The parties are diverse and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

5.     At least one member of the proposed class is a citizen of a state different from that of at least one defendant.

6.     Plaintiff's claims involve matters of national or interstate interest.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

8.     This court has personal jurisdiction over Defendant pursuant to Massachusetts long-arm statute because it transacts business in the Commonwealth of Massachusetts, it enters into contracts with the class members, including Plaintiff, and its conduct in violating the Massachusetts Wage Act is tortious under the long arm statute.

## PARTIES

9.     Plaintiff Charleau resides in Lynn, MA.

10.    Defendant is headquartered in Hanover, PA.

11.    Prior to around 2016, Defendant operated under the name S-L Distribution Company, Inc.

## FACTS

12.    Defendant, according to its website, "is a wholesale distributor of

various snack food products manufactured by subsidiaries and affiliates of Snyder's-Lance, Inc."

13.   Since 2018, Snyder's-Lance. Inc. ("Snyder's-Lance") has been owned by Campbell Soup Company ("Campbell") and has operated within Campbell's Snacks segment. At the time of the 2018 transaction, Campbell's President/CEO stated that the Snyder's-Lance acquisition "will provide our consumers with an even greater variety of better-for-you snacks." See https://www.sec.gov/Archives/edgar/data/57528/000119312517371261/d512155dex992.htm (last reviewed July 20, 2020).

14.   Defendant pays Plaintiff and other Massachusetts workers to deliver/distribute Snyder's-Lance food products to retail stores and other outlets (collectively "Outlets") within specific geographic areas referred to as "routes" or "territories."

15.   Defendant requires these workers to form corporations as a condition of doing business with Defendant and refers to the workers as "IBOs." Such terminology will be used throughout this complaint.

16.   Plaintiff worked for Defendant as IBOs in Massachusetts. In order to work for Defendant, Plaintiff was required to form a corporation called "Charleau Distribution LLC" that is headquartered at his home.

17.   Campbell refers to the Outlets as its "customers." For example,

Campbell's 2019 Annual Report explains that Wal-Mart Stores, Inc. is "[o]ur largest customer," accounting for approximately 20% of consolidated net sales. The Snack segment (which includes Snyder's-Lance) sells to Wal-Mart and other customers.  See also paragraph 13 supra.

18. Plaintiff and other IBOs are required to pick-up S-L's products from Defendant's warehouses and they use vehicles to transport and deliver products from S-L's warehouses to Defendant's customers.

19. On a typical week, IBOs such as the named Plaintiff work full-time delivering S-L's products to Defendant's customers for Defendant.  This work mainly consists of driving vehicles to stores within a territory designated by S-L, delivering S-L's products to these stores, and arranging the products on the shelves according to S-L's display standards.

20. Most of the products Plaintiff and other Massachusetts IBOs deliver/distribute are manufactured outside of Massachusetts.

21. S-L's customers purchase Snyder's-Lance snack food products at prices that are unilaterally set by Defendant, Snyder's-Lance, or Campbell (or that are the result of negotiations between Defendant and the Outlets).  IBOs generally play no role in setting or negotiating the prices of (or other terms or conditions relating to) the products delivered to the Outlets.

22. For over 95% of all items distributed, the Outlets' payments are made

directly to S-L.

23. S-L pay Plaintiff and other IBOs compensation for their distribution labor and services each week via direct deposit checks.

24. S-L *purports* to "charge" IBOs for S-L's products at prices S-L sets (but IBOs do not *actually* pay money for S-L's products each week). IBOs deliver those products to S-L's customers and S-L is paid by the Outlets for products sold.

25. Plaintiff and other IBOs are paid a set percentage in an amount equal to the difference between the amount of money that the Outlets pay S-L for products and the amount of money that S-L *purport*s to "charge" IBOs for S-L's products. Therefore, IBOs are paid a commission on the sale of each of Defendant's products.

26. Under a similar set of facts, a New York State Appellate court concluded that a comparable payment scheme equated to the payment of commissions. See Matter of Claim of Cowan, 159 A.D.3d 1312, 1314, 73 N.Y.S.3d 653, 655, leave to appeal dismissed sub nom. Cowan v. Bimbo Foods Bakeries Distribution, Inc., 32 N.Y.3d 1053, 113 N.E.3d 464 (2018) ("any hypothetical change in pricing negotiated by claimant with customers would only have resulted in a smaller commission as calculated by a set percentage" and "substantial evidence supports the Board's finding that claimant earned a commission.").

27. Defendant's company website states that "[t]he individual(s) who own the IBO entity must have a valid driver's license." The website further explains that "[a]n IBO is responsible for providing its own vehicle" and that "[c]ommon delivery vehicles used for this type of business are step vans, box trucks or trailers."

28. The work of Plaintiff and other IBOs falls squarely within Defendant's usual course of business. Indeed, Plaintiff and other IBOs are central to Defendant's core business as "a wholesale distributor of various snack food products."

29. Plaintiff and other IBOs are not engaged in independently established trades, occupations, professions, or businesses. Rather, IBOs generally work exclusively for Defendant and their associated corporate entities generally exist for the sole purpose of working for Defendant.

30. Defendant controls virtually every aspect of the work performed by Plaintiff and other IBOs by, *inter alia*, recording their daily activities via hand-held delivery devices, making all product pricing decisions, regulating the display of products on store shelves, visiting and inspecting IBOs' assigned stores to ensure compliance with company policies and procedures, and requiring IBOs to follow detailed operating guidelines and policies (both written and verbal).

31. Each week, Defendant makes deductions from the earnings of

Plaintiff and other IBOs.  These deductions are itemized on weekly "settlement sheets" and include, *inter alia*, deductions for route loan repayments, truck loan repayments, truck rental payments, and electronic equipment.

32. In addition, Plaintiff and other IBOs regularly incur work-related expenses for, *inter alia*, gas, vehicle maintenance/repair, and insurance.  Defendant does not reimburse Plaintiff and other IBOs for such expenses, which are directly related to the work Plaintiff and other IBOs perform for Defendant.

33. Plaintiff estimates that, during the applicable limitations period, the monetary value of his individual deductions and expenses referenced above exceeds $25,000 exclusive of statutory penalties.  For example, Defendant deducts approximately $477 from his wages each week just for route payments and equipment fees.

## CLASS ALLEGATIONS

34. Plaintiff brings this action on behalf of himself and other individuals who, either individually or through a closely held corporation, performed work for Defendant or any of its related or predecessor companies (including, *inter alia*, S-L Distribution Company, Inc. and SL Routes, LLC) as an IBO in Massachusetts within the past 3 years, excluding *only* those individuals who signed an arbitration agreement as part of the settlement in Tavares v. S-L Distribution Co, Inc., No. 1:13-CV-1313 (M.D. Pa.).

35.   Class action treatment of this action is appropriate because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied. In particular:

(a)   The class includes over 50 individuals, all of whom are readily ascertainable based on Defendant's records and are so numerous that joinder of all class members is impracticable.

(b)   Plaintiff is a class member, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

(c)   Plaintiff and his lawyers will fairly and adequately represent the class members and their interests.

(d)   Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendant's common business policies and practices, as summarized herein. The legality of these practices will be determined through the application of generally applicable legal principles to common facts.

(e)   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient

adjudication of this litigation.

## COUNT I

36. All previous paragraphs are incorporated as though fully set forth herein.

37. The MWA requires prompt and full payment of wages due. Specifically: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week . . . ." Mass. Gen. Laws ch. 149, § 148. Employees aggrieved under the MWA may bring a civil action, *see id*. at § 150, and employers may not escape liability through "special contract[s] with an employee," id. at § 148.

38. Massachusetts courts have "made clear that any attempt by an employer to shift the ordinary costs of doing business to its employees must be met with skepticism and carefully scrutinized." Martins v. 3PD Inc., 2014 U.S. Dist. LEXIS 40638, *16 (D. Mass. Mar. 27, 2014).

39. Here, Defendant violated the MWA by requiring Plaintiff and other class members to pay for their jobs/territories, subjecting them to various charges, withholdings, deductions as described above, and requiring them to pay for various job-related expenses as described above. See, e.g., Martins, 2014 U.S. Dist. LEXIS

40638, at *22-25 (MWA violated where employees required to bear costs of "in-home damage claims," broken freight," "various insurance policies," various "administrative fees," truck maintenance expenses, and truck lease payments); Awuah v. Coverall North America, Inc., 952 N.E.2d 890, 899-901 (Mass. 2011) (MWA violated where employees required to bear "liability-focused insurance costs" and "franchise fees"); Camera v. Attorney General, 941 N.E.2d 1118, 1124 (Mass. 2011) (MWA violated where employees charged for costs attributable to at-fault accidents).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief on behalf of himself and other class members: (A) class certification; (B) payments equaling the value of all improper deductions/withholdings; (C) reimbursement for all work-related expenses and route payments; (D) all available penalties/statutory damages (including treble damages) available under Massachusetts law; (E) pre-judgment interest; and (F) any other relief the Court deems just and proper.

Dated July 20, 2020                     Respectfully submitted,

                                        DAAVEED CHARLEAU on behalf of
                                        himself and all others similarly situated


                                        By his attorneys,

>*/s/ Harold Lichten*
>Harold L. Lichten (*pro hac vice*)
>Matthew W. Thomson (*pro hac vice*)
>Zachary L. Rubin (*pro hac vice*)
>LICHTEN & LISS-RIORDAN, P.C.
>729 Boylston St. Suite 2000
>Boston, MA 02116
>(617) 994-5800
>Fax (617) 994-5801
>hlichten@llrlaw.com
>mthomson@llrlaw.com
>zrubin@llrlaw.com
>
>Peter Winebrake (PA 80496)
>WINEBRAKE & SANTILLO, LLC
>715 Twining Road, Suite 211
>Dresher, PA 19025
>T. 215.884.2491
>F. 215.884.2492
>pwinebrake@winebrakelaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on July 20, 2020 using the CM/ECF filing system which will send a notice of electronic filing to all parties of record through the Court's system.

>*/s/ Harold Lichten*
>Harold Lichten

11