# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVEED CHARLEAU, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>S-L DISTRIBUTION COMPANY, LLC<br><br>Defendant. | Civil Action No. 1:20-cv-00879-JEJ<br><br>Hon. John E. Jones III |
| SNYDER'S-LANCE, INC., AS SUCCESSOR IN INTEREST TO S-L DISTRIBUTION COMPANY, LLC,<br><br>Third-Party Complainant,<br><br>v.<br><br>CHARLEAU DISTRIBUTION, LLC,<br><br>Third-Party Defendant. | |

### DEFENDANT'S THIRD-PARTY COMPLAINT
### AGAINST CHARLEAU DISTRIBUTION, LLC

Third-Party-Complainant/Defendant Snyder's-Lance, Inc., as successor in interest to S-L Distribution Company, LLC hereby brings this Third-Party Complaint against Third-Party Defendant Charleau Distribution, LLC ("Charleau Distribution") pursuant to Federal Rule of Civil Procedure 14(a).

1

## PARTIES

1. Snyder's-Lance, Inc. is a corporation organized under the laws of the State of North Carolina, with its principal place of business at 13515 Ballantyne Corporate Place, Charlotte, NC 28277.

2. Prior to February 1, 2021, S-L Distribution Company, LLC was a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1250 York Street, Hanover, PA 17331. On February 1, 2021, S-L Distribution Company, LLC was merged into Snyder's-Lance, Inc. (both entities hereinafter collectively referred to as "S-L").

3. Third-Party Defendant Charleau Distribution is a limited liability company organized under the laws of the State of Massachusetts, with its principal office at 38 Light Street Apt. 2, Lynn, MA 01905. Plaintiff Daveed Charleau ("Charleau") is a member of Charleau Distribution.

## JURISDICTION AND VENUE

4. This Court has supplemental subject matter jurisdiction over this Third-Party Complaint under Federal Rule of Civil Procedure 14 and 28 U.S.C. § 1367(a) because the claims in this Third-Party Complaint are so related to the other claims in this action (i.e., those brought in Plaintiff's Amended Complaint and Defendant's Counterclaim) over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Specifically, the claims in this Third-Party Complaint, Plaintiff's Amended Complaint, and Defendant's Counterclaim all concern S-L, the Counterclaim Defendant Charleau, and Charleau Distribution's respective alleged obligations and performance under the Distribution Agreement to which Charleau Distribution and S-L are parties.

5. On or about December 13, 2015, Charleau Distribution entered into a Distributor Agreement with S-L that sets forth the parties' mutual agreement that Charleau Distribution was an independent contractor and would provide services under the contract as such.  The Distributor Agreement is incorporated into this Third-Party Claim as though fully set forth herein and is attached hereto as Exhibit A.

6. The Distributor Agreement confers on Charleau Distribution the right to distribute certain of S-L and partner products in a specific geographic territory. Pursuant to the Distributor Agreement, Charleau Distribution purchases products from S-L and, thereafter, sells such products to certain customers located within that geographic territory.

7. Charleau Distribution has retained (and continues to retain) the revenue generated through the operation of its business, including, but not limited to, the difference between the prices at which it purchases products from S-L and the prices at which it sells those products to customers.

8. The Distributor Agreement provides that "[t]hrough this Agreement, the parties intend to, and do, create an independent contractor relationship between them," and that "Distributor is, and shall hold itself out as, an independent contractor and shall not be treated as an employee, franchisee, partner, venturer or agent of S-L for any federal, state or local tax, social security, workers' compensation or unemployment compensation purposes or for any other purposes whatsoever." *See, e.g.*, Ex. A, Arts. 2.A, 2.E. Accordingly, and as a result of its status as an independent contractor, upon information and belief, Charleau Distribution has deducted on its state and federal tax returns thousands of dollars of expenses associated with running its business.

9. These core independent contractor provisions are so central to the purpose of the Distributor Agreement that it further provides: "[a]ny contrary final determination by any board, court of competent jurisdiction or agency shall entitle either party to immediately declare this Agreement null and void." Ex. A, Art. 2.A.

10. To that end, Article 2 of the Distributor Agreement also provides that S-L is "interested only in the results obtained under this Agreement," and that Charleau Distribution has the right to determine "[t]he manner, means and methods by which" it achieves those results, including the right to "obtain and acquire, on its own and at its own cost, all of the skills, instructions, employees, resources, equipment, materials and training that is needed to perform its obligations and services" pursuant

to the Distributor Agreement. *See, e.g.*, Ex. A. Charleau Distribution's right to control its business and personnel is broad. For example, the Distributor Agreement expressly clarifies that Charleau Distribution enjoys the right to set its own "schedule, hours worked, [and] sequence of performing work," and determine "when breaks are taken, [which] vehicles and equipment utilized, and other details of performance." *Id.* at Art. 2.B. It also expressly permits Charleau Distribution to "engag[e] in any other business or profession or selling or distributing any other products." *Id.* at Art. 2.F.

11. Consistent with its status as an independent business operator and contractor, Charleau Distribution also agreed to bear all the costs and expenses of operating its business. For example, the Distributor Agreement provides:

> Distributor agrees to, and shall, be solely responsible for selecting, providing and maintaining, at its expense, all personnel, supervision, facilities, equipment, including, for example, sales vehicles, and materials as may be needed for the efficient and proper distribution and sale of the Products and the operation of the Territory. Distributor shall be solely responsible for bearing all costs and expenses for its business and operating and servicing the Territory, including, but not limited to, for vehicles, depreciation, maintenance, fuel, oil, tires, repairs, taxes, insurance coverage, licenses, vehicle registration and renewal fees and tolls. S-L shall not be liable to Distributor or anyone else for any such costs or expenses.

Ex. A at Art. 5.B.

12. Charleau Distribution also retains the exclusive right to hire and retain (or, in its discretion, not hire or retain) such employees and other agents as it sees fit

to carry out its business operations pursuant to the Distributor Agreement. *See, e.g.*, Ex. A, Arts. 2.D, 5.B, 5.E.  Charleau Distribution agreed that none of its employees or agents will be, or be considered, employees of S-L or receive compensation or benefits typically provided to employees, including "wages" and "overtime payments," among others. *Id.* at Arts. 2.E, 2.G, 5.E.  Rather, Charleau Distribution agreed (among other things) to be solely financially responsible for all costs and expenses incurred in the operation of its business, including without limitation paying wages and providing benefits to employees and agents that it hired. *See, e.g.*, Ex. A, Art. 5; *see also id.* Art. 2.G ("Neither party shall have any obligation whatsoever to provide any employee benefits or privilege of any kind or nature to the other or its employees, including, without limitation, overtime payments, pension benefits, fringe benefits, insurance benefits, travel privileges or benefits, health benefits or any other benefits or privileges whatsoever.").  To that end, Charleau Distribution also expressly "agrees to, and shall, comply with all federal, state and local laws, rules and regulations applicable to its business and the performance of this Agreement.  Among other things, Distributor shall be solely responsible for complying with all wage, overtime, benefit and other employment laws for, and regarding, its employees." Ex. A, Art. 5.F.

13.  Under Article 19.B of the Distributor Agreement, Charleau Distribution is required to, *inter alia*:

> [P]rotect, defend, indemnify, and hold harmless S-L . . . from and against any and all fines, rights, claims, costs, expenses (including reasonable attorneys' fees and court costs), demands, damages, punitive damages, actions, causes of action, interest, penalties and other liabilities of every kind and nature, whether known or unknown, whether in contract, tort, equity or otherwise, whether statutory or common law, arising or resulting, directly or indirectly, from: Distributor's actions, omissions or negligence; the performance of this Agreement by Distributor; any breach of this Agreement by Distributor; the operation of Distributor's business; or the use or operation of Distributor's vehicles.

*See* Ex. A at Art. 19.B.

14. The Distributor Agreement also contains a Governing Law provision which provides that "[t]he validity, interpretation and performance of this Agreement, and any disputes or claims which arise between the parties, shall be governed by, subject to, and construed in accordance with, the laws of the Commonwealth of Pennsylvania without giving effect to its conflicts of law or choice of law provisions." *See* Ex. A at Art. 24.M.

15. On May 6, 2020, Charleau filed the underlying class action lawsuit and on July 20, 2020, Charleau filed an Amended Complaint alleging that S-L "violated the [Massachusetts Wage Act] by requiring [Charleau] and other class members to pay for their jobs/territories, subjecting them to various charges, withholdings, [and] deductions ... and requiring them to pay for various job-related expenses." Amd. Comp. ¶ 39. Through the putative class action, Charleau seeks "payments equaling the value of all improper deductions/withholdings," "reimbursement for all work-related expenses and route payments," "all available penalties/statutory damages

7

(including treble damages) available under Massachusetts law," "pre-judgement interest," and "any other relief the Court deems just and proper."

## COUNT I – INDEMNIFICATION

16. All previous paragraphs are incorporated as though fully set forth herein.

17. The indemnification provision in Charleau Distribution's Distributorship Agreement, *see* Art. 19.B, covers the claims brought by Charleau and mandates full indemnification of S-L therefor.

18. S-L already has incurred attorneys' fees, costs and other expenses in connection with defending the claims of Charleau in this lawsuit and will continue to incur such fees, costs, and expenses investigating and defending against Charleau's current claims, as well as prosecuting its well-grounded claims against Charleau and Charleau Distribution.  S-L is entitled to indemnification from Charleau Distribution for all such fees, costs and expenses.

19. Additionally, to the extent S-L is found liable to Charleau for any damages or other amounts of any kind (including without limitation alleged wages, benefits, expenses, deductions, punitive damages, penalties, interest, costs, and/or fees), and/or to the extent that S-L agrees to make any payment or other undertaking to resolve this lawsuit, S-L is entitled to indemnification from Charleau Distribution for all or part of any such payment, other undertaking, judgment or settlement.

## COUNT II – BREACH OF CONTRACT

20. All previous paragraphs are incorporated as though fully set forth herein.

21. The Distributor Agreement is an enforceable contract between Charleau Distribution and S-L.

22. In the Distributor Agreement, Charleau Distribution agreed that it, and its employees and agents (thereby including Charleau), were solely independent contractors vis a vis S-L, not employees, and were not entitled to any wages, benefits or other compensation of any kind from S-L.

23. Charleau Distribution also agreed that it was solely responsible for paying all personnel, including Charleau, all wages and benefits (including overtime wages, to the extent applicable), that it would in fact bear all such obligations, costs and expenses, and that under no circumstances would S-L have to provide wages, benefits or compensation to Charleau Distribution's employees or agents.

24. Furthermore, Charleau Distribution agreed that it would comply with all laws applicable to its business and the Distributor Agreement, including without limitation all wage, overtime, benefit and other employment laws for and regarding its employees.

25. Charleau's filing of the Complaint (irrespective of its outcome) triggered a breach of Charleau Distribution's obligations under the Distributor Agreement, including without limitation because Charleau (as Charleau Distribution's employee

and/or agent) purports to challenge Charleau's agreed-upon non-employee status pursuant to the Distributor Agreement, and because Charleau is not complying with its agreement to bear all costs and expenses associated with its employees and agents. To the contrary, S-L has already borne, and will continue to bear, substantial attorneys' fees, costs and other expenses by virtue of Charleau's filing of the Complaint.

26. Additionally, to the extent Charleau prevails on any of his claims against S-L (including any claims premised upon Charleau's assertion that he is an employee and not an independent contractor with respect to S-L and was not paid all wages and other amounts under the law), Charleau Distribution again breached the Distributor Agreement including for the foregoing reasons.

27. Moreover, as noted, Charleau Distribution agreed that "Distributor is, and shall hold itself out as, an independent contractor and shall not be treated as an employee, franchisee, partner, venturer or agent of S-L for any federal, state or local tax, social security, workers' compensation or unemployment compensation purposes or for any other purposes whatsoever." *See, e.g.,* Ex. A, Art. 2.E. In the event the Court accepts Charleau's apparent theory that Charleau (and not Charleau Distribution) executed the Distributor Agreement as the "true" party thereto and that Charleau Distribution is a sham entity in whose shoes Charleau essentially stands

(which it should not), then Charleau's claim of employee status breaches the foregoing covenant and representation.

28. S-L will be damaged to the extent that it is held solely or jointly liable for any claims by Charleau based on or arising out of Charleau's alleged status as an S-L employee, including without limitation due to Charleau Distribution's failure to pay Charleau all owed compensation, benefits or other amounts of any kind (including overtime wages, to the extent applicable).

29. S-L is also entitled to its attorneys' fees, costs, and expenses incurred, and those that continue to be incurred, in defending this action and pursuing its breach of contract claim against Charleau Distribution pursuant to the Distributor Agreement.

**COUNT III – UNJUST ENRICHMENT (*IN THE ALTERNATIVE*)**

30. All previous paragraphs are incorporated as though fully set forth herein.

31. Under the Distributor Agreement and as a result of Charleau Distribution's status as an independent contractor, Charleau Distribution enjoyed (and continues to enjoy) numerous rights and benefits that it would not have enjoyed (and which S-L would not have memorialized by executing the Distributor Agreement) had Charleau been designated and/or regarded as an employee of S-L, including if Charleau had been designated or regarded as the effective "alter ego" of Charleau Distribution who stands in its shoes. These rights and benefits include,

without limitation, the right to earn substantial revenue pursuant to the Distributor Agreement through the distribution and sale of S-L products; the right to engage in any other business or professions, including, but not limited to, contracting with other entities, and distributing products for other entities; the right to sell all or part of its distribution rights and retain the revenue from such sales; and the tax benefits obtained by virtue of its independent contractor status.  By its actions, including but not limited to its retention of the revenue generated from its independent contractor business, Charleau Distribution acknowledged and agreed to, and otherwise reaped the rewards of, the financial arrangements and other terms and conditions set forth in the Distributor Agreement.

32. As a condition of retaining the benefits received pursuant to the Distributor Agreement, Charleau Distribution agreed that it was an independent contractor; that its employees and agents were non-employees of S-L; that it and they were not entitled to wages, benefits or other employment-related compensation of any kind from S-L; and that it would pay all costs and expenses associated with operating its businesses, including any all wages, benefits and other amounts related to employees it elected to have perform its obligations under the Distributor Agreement.

33. Had S-L known that Charleau would be found to be an employee of S-L and/or to stand in the shoes of Charleau Distribution as the effective "alter ego" of a

purported sham entity, without honoring and enforcing S-L's indemnification and other contractual rights against Charleau Distribution, S-L would not have entered into the Distributor Agreement with Charleau Distribution, and Charleau Distribution would not have enjoyed the rights and benefits set forth above including, but not limited to: retaining the revenue from the products that it sells; setting its own schedule, hours worked, and sequence of performing work for itself and for its employees and agents; determining when breaks are taken, which vehicles and equipment are utilized, and other details of performance of its work; taking tax deductions for the costs of operating its businesses; compensating any owners, officers, executives, members, agents, and/or employees; and enjoying the right to engage in other businesses and professions and selling all or parts of its distribution rights and retaining the revenue from such sale(s).

34.  Charleau Distribution is and/or was enriched at S-L's expense as a result of Charleau Distribution's status (and, by extension, that of its agents and employees, including Charleau) as an independent contractor with respect to S-L, including without limitation as set forth above.  Among other things, pursuant to the financial arrangements set forth in the Distributor Agreement, Charleau Distribution's customers pay Charleau Distribution for the products that Charleau Distribution sells.  Absent Charleau Distribution's status (and, by extension, that of its employees and agents including Charleau) as independent contractors with

respect to S-L, and absent the enforceability of the indemnity and other provisions of the Distributor Agreement, S-L would have retained the rights to sell products to the same customers at a higher price than it sold those products to Charleau Distribution, and thus received additional revenue from such customers, and would have retained the other rights and benefits afforded to Charleau Distribution (and any such benefits that Charleau Distribution elected to bestow upon Charleau) as an independent contractor.

35. As set forth above, the Court should find that Charleau is not an employee of S-L (and by implication that Charleau Distribution has been properly classified as an independent contractor and not a sham entity). However, if the Court nonetheless concludes that Charleau should have been classified as an employee of S-L or otherwise finds in Charleau's favor on any of Charleau's claims, and that S-L's indemnity and breach of contract claims against Charleau Distribution are not meritorious for any reason, then a central purpose of the Distributor Agreement will have been frustrated. Under such circumstances, S-L should be permitted (pursuant to the express terms of the Distributor Agreement and otherwise) to declare the Distributor Agreement void and hereby makes such an election under such circumstances. The Court should then conclude that the Distributor Agreement is void. Upon such a finding, any award(s) to Charleau of any or all of the relief sought in the Amended Complaint would unjustly enrich Charleau Distribution at S-L's

expense.  Among other things, Charleau Distribution would be unjustly enriched by retaining substantial benefits that were not contemplated had S-L been required to bear any or all of the obligations and liabilities that Charleau asserts, including without limitation by virtue of the disregard of Charleau's asserted non-employee status vis a vis S-L.

36.  Under such circumstances, equity and good conscience require that S-L be awarded the full value of all earnings of any kind accruing directly or indirectly to Charleau Distribution under or as a result of the Distributor Agreement and the relationships and transactions contemplated thereby, including an order to offset any award of damages, penalties, liquidated damages, punitive damages, interest, and any other liabilities to which Charleau may be entitled as a purported employee of S-L or otherwise.  The value of such earnings includes, but is not limited to:  (1) revenues that Charleau Distribution and/or its employees/members/agents like Charleau generated through the sale of the products that they purchased from S-L; (2) revenue that Charleau Distribution and/or its employees/members/agents like Charleau generated through the sale of all or parts of their distribution rights; (3) compensation that Charleau received for serving as an owner, officer, executive, member, agent, and/or employee of Charleau Distribution; and (4) compensation that any of them received as a result of having the ability to engage other businesses

and professions and/or hold part-time or full-time employment while operating under the Distributor Agreement.

## PRAYER FOR RELIEF

WHEREFORE, S-L respectfully requests an award in its favor on its indemnification and breach of contract claims against Charleau Distribution regardless of the outcome of this litigation, including without limitation an award to S-L of any and all damages and other amounts or awards of any kind that S-L is found to owe to Charleau (if any), as well as an award of all of its attorneys' fees, expenses and costs incurred by S-L in investigating and defending Charleau's claims.

Additionally, and in the alternative, in the event that the Court finds that Charleau should have been classified as an employee of S-L or otherwise finds in Charleau's favor on any of Charleau's claims, and that S-L's indemnity and breach of contract claims against Charleau Distribution are not meritorious for any reason, then S-L asserts its right to void the Distributor Agreement and respectfully requests a finding that the Distributor Agreement is null and void.  In such event, S-L respectfully requests an award in its favor on its unjust enrichment claim against Charleau Distribution, including all amounts and benefits described in Count III above, and an award of all of its attorneys' fees, expenses and costs incurred by S-L in investigating and defending Charleau's claims.

S-L also respectfully requests any and all such other damages, amounts and/or other relief as may be available under applicable law and/or as the Court may deem just and proper.

Date: June 21, 2021                                 Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Michael J. Puma*
Michael J. Puma (ECF User)
Benjamin K. Jacobs (*pro hac vice*) (ECF User)
Emily C. Reineberg (ECF User)
Antonia M. Moran (ECF User)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5000 / F. 215.963.5001
michael.puma@morganlewis.com
benjamin.jacobs@morganlewis.com
emily.reineberg@morganlewis.com
toni.moran@morganlewis.com

James P. Looby (*pro hac vice*) (ECF User)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
T. 312.324.1000 / F. 312.324.1001
james.looby@morganlewis.com

*Attorneys for Third-Party Complainant/Defendant Snyder's-Lance, Inc., as successor in interest to S-L Distribution Company, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2021 a copy of the foregoing Third-Party Complaint against Charleau Distribution, LLC was filed electronically and served upon all counsel of record via operation of the Court's CM/ECF System or by mail upon anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF System.

                                         */s/ Antonia M. Moran*
                                         Antonia M. Moran