IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| SNYDER'S-LANCE, INC., AS SUCCESSOR IN INTEREST TO S-L DISTRIBUTION COMPANY, LLC, | : : : : | 1:20-cv-00879-JPW |
| Third-Party Complaint, | : : | |
| v. | : : | |
| CHARLEAU DISTRIBUTION, LLC, | : : | |
| Third-Party Defendant. | : : : | |

**BRIEF IN SUPPORT OF CHARLEAU DISTRIBUTION, LLC
MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

Date:  September 7, 2021

Peter Winebrake
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Other Counsel Listed on
Signature Page*

## **TABLE OF CONTENTS**

I.   INTRODUCTION  (pg. 1)

II.  BACKGROUND  (pg. 3)

    A. Charleau forms an LLC and signs a Distributor Agreement.  (pg. 3)

    B. The DA attaches as "Personal Guarantee" that makes Charleau personally liable for all monies the LLC may owe S-L.  (pg. 3)

    C. The DA expressly recognizes that a "court of competent jurisdiction" might find Charleau to be S-L's employee.  (pg. 4)

    D. Charleau sues S-L for statutory wages.  (pg.4)

    E. S-L files a third-party complaint against Charleau's LLC.  (pg. 5)

III.ARGUMENT  (pg. 7)

    A. Counts I and II of S-L's third-party complaint should be dismissed as contrary to public policy.   (pg. 8)

        1. As recognized in *Mode*, S-L's Indemnification claims violate the public policy underlying the federal Fair Labor Standards Act ("FLSA").  (pg. 8)

        2. Applying principles from FLSA decisions, several courts have held that indemnification claims violate state wage laws.  (pg. 9)

        3. S-L's indemnification claim violates the MWA.  (pg. 12)

    B. Counts I and II also should be dismissed to the extent they seek indemnification for attorney's fees. (pg. 12)

    C. Count I also should be dismissed because Charleau's underlying wage lawsuit does not fall within the indemnification provision's subject matter. (pg. 14)

D.  Count III should be dismissed because S-L's unjust enrichment claim concern relationships that are based on theDAs.  (pg. 15)

E.  Count III should be dismissed because S-L's S-L fails to plead the substantive elements of unjust enrichment.  (pg. 16)

IV.  CONCLUSION  (pg. 20)

Charleau Distribution, LLC ("Charleau's LLC") submits this brief in support of its motion to dismiss the third-party complaint filed by Snyder's-Lance, Inc. ("S-L"):

## I.   INTRODUCTION

"Disputes about whether workers are properly classified as employees or independent contractors are a classic and recurring issue in American law," *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 316 (3d Cir. 2016), and are matters "of great importance . . . to the structure of the American workplace," *Craig v. FedEx Ground Package System, Inc.*, 686 F.3d 423, 430 (7th Cir. 2012).  When businesses "misclassify" workers as contractors, the workers are deprived of statutory rights, the government is deprived of tax revenue, and law-abiding competitors are disadvantaged.  *See id.* at 430-31.

Private civil actions brought by workers play a crucial role in preventing independent contractor misclassification. In recent years, such civil actions have enabled our Circuit Court to address the employment status of Uber drivers,[1] exotic dancers,[2] mattress delivery drivers,[3] janitorial workers,[4] and engineers.[5]

---

[1]   *Razak v. Uber Technologies, Inc.*, 951 F.3d 137 (3d Cir. 2020).
[2]   *Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3d Cir. 2019).
[3]   *Hargrove v. Sleepy's LLC*, 612 Fed. Appx. 116 (3d Cir. 2015).
[4]   *Williams*, 837 F.3d 314.
[5]   *Safarian v. American DG Energy Inc.*, 729 Fed. Appx. 168 (3d Cir. 2018).

This litigation fits the mold.  Here, Daveed Charleau ("Charleau") claims he is S-L's employee and, as such, entitled to the benefits of the Massachusetts Wage Act.  *See* Doc. 31.  S-L opposes Charleau's lawsuit, contending that he is not its employee and that no wages are owed.  Unfortunately, S-L does not stop there.  It also brings a third-party complaint against Charleau's LLC seeking, *inter alia*, indemnification for: (i) all attorney's fees and expenses associated with the wage lawsuits and (ii) reimbursement of any damages Charleau might win in his underlying lawsuit.

In recent months, several Court have rejected S-L's litigation tactic of filing "cookie-cutter" third-party complaints against the LLCs of any workers who dare to file a wage rights lawsuits against S-L.  Most recently, in *Mode v. S-L Distribution Co.*, 2021 U.S. Dist. LEXIS 165511 (W.D.N.C. Aug. 31, 2021), the district court dismissed hundreds of S-L's third-party complaints as a matter of law, observing, *inter alia*, that S-L's "scheme" of forcing workers to form LLC's and then seeking indemnification from the LLCs when the workers assert their wage rights "would plainly discourage the workers . . . from asserting their rights under the FLSA, which clearly violates public policy.  *See id.* at *46-58. Meanwhile, in *Alagi v. S-L Distribution Co.*, 2021 Cal. Super. LEXIS 532 (Cal. Super. Ct. May 20, 2021), a state trial court opined that S-L's tactics "amount to 'smoke and mirrors' in an elaborate scheme to essentially ensure that regardless of

outcome of the [wage rights claims asserted under the state Private Attorney

General Act], that it would recover from Plaintiffs through their businessentities

and to potentially dissuade Plaintiffs from bringing their claims under PAGA and

violate public policy under Civil Code section 1668." *Id.* at *6.

Here, as in *Mode* and *Alagi*, S-L's third party complaint should fail.

## II.   BACKGROUND

### A. Charleau forms an LLC and signs a Distributor Agreement.

Charleau formed Charleau's LLC in order to work for S-L. *See* Doc. 64 at ¶

3; *see also* Doc. 57 at 1, 12. Next, he personally signed a Distributor Agreement

("DA") which "confers on [Charleau's LLC] the right to distribute certain of S-L

and partner products in a specificgeographic territory." Doc. 64 at ¶ 6.

### B. The DA attaches as "Personal Guarantee" that makes Charleau personally liable for all monies the LLC may owe S-L.

The DA attaches a "Personal Guaranty" signed by Charleau *in his individual*

*capacity* as a "Guarantor" of any "payments, liabilities or obligations [that] may be

owed by [the LLC] to S-L pursuant to the [DA]." The Personal Guarantee signed

by Charleau is attached as Exhibit A. It is unclear why the DA accompanying S-

L's third-party complaint does not include this material attachment.

The Personal Guaranty states that Charleau "is a director, officer and/or

shareholder of [Charleau's LLC]" and was executed "to induce S-L to enter into

the [DA]." Ex. A at Fourth and Fifth "Whereas" Clauses.  Moreover, Charleau "absolutely, unconditionally, and irrevocably guarantees to S-L . . . the full and prompt payment of the Payments and the prompt and complete performance of all the [LLC's] obligations under or in connection with the [DA]." *Id.* at ¶ 1.  These payment obligations "shall continue to be effective upon the insolvency, bankruptcy, or reorganization of the [LLC]." *Id.* at ¶ 6.

### C. The DA expressly recognizes that a "court of competent jurisdiction" might find Charleau to be S-L's employee.

The DA contains provisions stating that Charleau's LLC is an "independent contractor." *See* DA Article 2.  Of course, Charleau can be deemed S-L's employees notwithstanding such contract language.  *See*, *e.g.*, *Maranzano v. S-L Distribution Company, LLC*, 2020 WL 7974332, 2020 U.S. Dist. LEXIS 239355, *8-9 (M.D. Pa. Dec. 18, 2020).

The DAs expressly recognize and account for the litigation risk that a "court of competent jurisdiction" might find a Charleau to be S-L's statutory employee.  Under such circumstances, either S-L or Charleau's LLC may "declare [the DA] nulland void."  DA Article 2.A.

### D. Charleau sues S-L for statutory wages.

In May 2020, Charleau sued S-L in the U.S. District Court for the District of Massachusetts for violating the Massachusetts Wage Act ("MWA"), Mass. Gen. Laws ch. 149, §§ 148, *et seq.*  *See* Doc. 1 at ¶ 33.  After the litigation was

transferred to this Court pursuant to a forum selection clause in the DA, *see* Docs. 8-11, and the complaint was amended, *see* Doc. 31, S-L moved to dismiss the amended complaint, *see* Docs. 42-43.  S-L's motion to dismiss failed.  *See* Doc. 57.  The Court's memorandum denying the motion summarized Clarleau's basic MWA claim as follows:

> Plaintiff alleges that [S-L] has violated the [MWA], "by requiring Plaintiff and other class members to pay for their jobs/territories, subjecting them to various charges, withholdings, deductions as described above, and requiring them to pay for various job-related expenses." (Doc. 31 at ¶ 39). To state such a claim under the MWA, Plaintiff must allege that: (1) he is an employee as defined by the MWA; (2) he was compensated by "wages" or "commissions" as defined by the MWA; and (3) the employer did not pay the Plaintiff's wages or commissions in a timely manner.  Mass. Gen. Laws ch 149, §148.

Doc. 57 at 7.

### E.  S-L files a third-party complaint against Charleau's LLC.

After failing to dismiss Charleau's complaint, S-L filed a third-party complaint against Charleau's LLC.  *See* Doc. 64. The third-party complaint consists of three claims:

**<u>Indemnification</u>:**  In Count I, S-L asserts that, under DA Article 19A, Charleau's LLC must indemnify S-L for "attorney's fees, costs and other expenses" incurredboth (i) in "defending" against Charleau's wage lawsuit against S-L and (ii) in "prosecuting" S-L's counterclaims against Charleau and its third-party claims against Charleau's LLC.  *See* Doc. 64 at ¶ 18.  In addition, S-L

contends that, if S-L loses or settles Charleau's wage lawsuit, then his LLC must reimburse S-L for any payments to him.  *See id.* at ¶19.

**Breach of Contract**:  In Count II, S-L asserts that Charleau's LLC "breached" the DA when Charleau filed his wage lawsuit against S-L.  *See* Doc. 64 at ¶ 25.  S-L also asserts that Charleau's LLC will "breach" the DA if, in the future: (i) Charleau wins his wage lawsuit or (ii) this Court to "accept[s]" the "apparent theory" that Charleau is "the 'true' party" to the DA and that his LLCs is a "sham entity."  *See id.* at ¶ 27.

The damages associated with these past and future contractual "breaches" are twofold.  First, S-L claims it will be damaged if Charleau wins the wage lawsuit and recovers "owed compensation, benefits or other amounts of any kind." Doc. 64 at ¶ 28.  Second, S-L claims it is "entitled to its attorney's fees, costs, and expenses incurred" in both defending against Charleau's wage lawsuit and prosecuting its third-party complaint against Charleau's LLC.  *See id.* at ¶ 29.

**Unjust Enrichment**: In Count III, S-L asserts an unjust enrichment claim. The gist of the claim appears to be that "[u]nder the [DA] and as a result of [Charleau's LLC's] status as independent contractors, [Charleau's LLC] enjoyed (and continues to enjoy) numerous rights and benefits that they would not have enjoyed . . . had Charleau been designated and/or regarded as an employee of S-L . . . ."  Doc. 64 at ¶ 31.  Such "rights and benefits" include:

> the right to earn substantial revenues pursuant to the [DA] through the distribution and sale of S-L products; the right to engage in any other businesses or professions, including, but not limited to, contracting with other entities, and distributing products for other entities; the right to sell all or parts of its distribution rights and retain the revenue from such sales; and the tax benefits obtained by virtue of its independent contractor status.

*Id.*

S-L's unjust enrichment claim is triggered only if the Court "concludes that Charleau should have been classified as an employee of S-L or otherwise finds in Charleau's favor."  Doc. 64 at ¶ 35.  Under such circumstances, S-L "should be permitted (pursuant to the express terms of the [DA] and otherwise) to declare the [DA] void . . . [and] "[t]he Court should then conclude that the [DA} is void."  *Id.*

## III.   ARGUMENT

This Court has summarized the applicable standard of review as follows:

> In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief.

*Collins v. Holsinger*, 2021 WL 3033833, 2021 U.S. Dist. LEXIS 133461, *4 (M.D. Pa. July 19, 2021) (Wilson, J.) (internal citations omitted).

Here, under the above standard, S-L's third-party complaint should fail for

the following reasons:

### A. Counts I and II of S-L's third-party complaint should be dismissed as contrary to public policy.

As already noted, Counts I and II of S-L's third-party complaints – labeled

"Indemnification" and "Breach of Contract" – seek to require Charleau's LLC to

indemnify S-L for any attorney's fees, litigation costs, and any monies paid to

Charleau as a result of his wage lawsuit.  As discussed below, such indemnification

claims must fail because they violate the public policy underlying the MWA.

### 1. As recognized in *Mode*, S-L's Indemnification claims violate the public policy underlying the federal Fair Labor Standards Act ("FLSA").

As noted in the introduction, the *Mode* Court recently held that, as a matter

of public policy, S-L's indemnification claims against hundreds of workers' LLCs

are illegal in the context of FLSA litigation:

> Similarly, allowing S-L's indemnification claim to proceed would inevitably chill the right of a putative FLSA plaintiff in these circumstances to pursue a FLSA claim. *See Herman v. RSR Security Services LTD*, 172 F.3d 132, 143-44 (2d Cir. 1999) *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1407-08 (10th Cir. 1992); [*Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992)]; *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264-65 (5th Cir. 1986). This concern is particularly applicable here where S-L indisputably required the Plaintiffs to form corporate entities and execute Distributor Agreements which included a provision that – according to S-L – requires the corporate entity to "indemnify" S-L in the event that the business arrangements devised by S-L are challenged by the Plaintiffs.  If enforced, this scheme would plainly discourage the workers who were required to form the corporate

entities from asserting their rights under the FLSA, which clearly violates public policy. *See Abdul-Rasheed v. KableLink Communs., LLC*, 2013 WL 6182321, *14-15, 2013 U.S. Dist. LEXIS 167159, *13 (M.D. Fla. Nov. 25, 2013) ("If courts imposed an attorneys' fees award against unsuccessful independent contractors that have indemnity agreements, it would incentivize employers to mis-classify employees as independent contractors in an independent contractor agreement that contains an indemnity provision based on the hope that the possibility of an attorneys' fee award would dissuade litigation on the issue"); [*Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008) (The FLSA "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct.").

*Mode*, 2021 U.S. Dist. LEXIS 165511, at *52-53; *accord Robertson v. REP Processing, LLC*, 2020 U.S. Dist. LEXIS 175456, *18 (D. Colo. Sept. 24, 2020); *Quintana v. Explorer Enterprises*, 2010 WL 2220310, 2010 U.S. Dist. LEXIS 54683, *4-5 (S.D. Fla. June 3, 2010).[6]

###### 2. Applying principles from FLSA decisions, several courts have held that indemnification claims violate state wage laws.

Most state wage statutes are similar to the FLSA with respect to the underlying policy of protecting workers and ensuring compliance through private civil litigation. So it's not surprising that some courts have looked to FLSA

---

[6] Several courts have held that the above principles require the dismissal of indemnification claims even if the underlying lawsuit is brought by a purported "independent contractor" who has not yet been deemed an employee covered by the FLSA. *See, e.g.*, *Fernandez v. Kinray, Inc.*, 2014 U.S. Dist. LEXIS 17954, * 27 (E.D.N.Y. Feb. 5, 2014); *Abdul-Rasheed*, 2013 U.S. Dist. LEXIS 167159, *14-15 (M.D. Fla. Nov. 25, 2013).

jurisprudence in prohibiting civil defendants from seeking indemnification for alleged violations of state wage law.

For example, in *Gustafson v. Bell Atlantic Corp.*, 171 F. Supp. 2d 311, 328 (S.D.N.Y. 2001), a worker alleged that the company violated the FLSA and the New York Labor Law ("NYLL") by misclassifying him as an independent contractor and denying him overtime pay and other benefits. *See id.* at 316. Like S-L, the company required the worker to form his own corporation – called J.A.G. Services, Inc. ("JAG") – which contracted directly with the company. *See id*. at 316-17. In response to the worker's misclassification lawsuit, the company filed third-party claims against JAG for indemnification based on the contract between the company and JAG. *See id.* at 327. The district court dismissed the indemnification claim because it "would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute." *Id.* at 328. Next, the court dismissed the indemnification claim under the NYLL, finding that "the same reasoning holds for similar provisions of New York Labor laws" and that "[t]he policies behind the New York laws are similar to the federal statute." *Id.* at 328 n. 8.[7]

---

[7] Other New York courts have reached the same result. *See*, *e.g.*, *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013); *Goodman v. Port Authority of New York and New Jersey*, 850 F. Supp. 2d 363, 388-89 (S.D.N.Y. 2012).

Likewise, in *Cordova v. FedEx Ground Package Systems, Inc*., 104 F. Supp. 3d 1119 (D. Or. 2015), package delivery drivers alleged that FedEx violated Oregon's wage statute by misclassifying them as independent contractors. *See id.* at 1122-25. FedEx responded by filing third-party indemnification claims against the corporate entities that purportedly employed the drivers per a contracts between the entities and FedEx. *See id.* Relying on *Gustafson* and other cases, the court dismissed the third-party claims: "Allowing [FedEx] to assert indemnification and indemnification-type claims against Third-Party Defendants based on those contracts contravenes the [Oregon wage statute] and the public policies it enforces." *Id.* at 1136.

Finally, in *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011 (N.D. Il. 2009), employees asserted minimum wage and overtime claims under both the FLSA and Illinois Minimum Wage Law ("IMWL"). *See id.* at 1013. In response, the employer asserted indemnification counterclaims. *See id.* at 1013-14. The court dismissed the indemnification counterclaims as violating the FLSA's policy objectives. *See id.* at 1014-16. Then, the court dismissed the indemnification counterclaims as violating the IMWL's similar policy objectives: "As with the FLSA, the IMWL's statutory goals would be undermined by diminishing the employer's compliance incentives if an employer were permitted to seek indemnity or contribution from its employees for statutory violations." *Id.* at 1017.

### 3.  S-L's indemnification claim violates the MWA.

Here, as in *Gustavson*, *Cordova*, and *Villareal*, this Court should hold that Counts I and II – both of which ask Charleau's LLC to indemnify S-L for fees, costs, and wage damages stemming from Charleau's lawsuit against S-L – violate the public policy underlying the MWA.

The MWA is a "broad remedial statute designed to protect employees from the prolonged detention of earned wages." *Malden Police Patrolman's Ass'n v. City of Malden*, 82 N.E.3d 1055, 1066 (Mass. App. 2017); *see generally Melia v. Zenhire, Inc.*, 967 N.E.2d 580, 587-88 (Mass. 2012).  Indeed, in another action alleging that S-L violated the MWA by misclassifying workers as independent contractors, this Court observed that the MWA's public policy goals are so substantial that workers could assert MWA claims notwithstanding Pennsylvania choice-of-law provisions in their distributor agreements.  *See Tavares v. S-L Distribution Company, Inc.*, 2014 WL 12951783, 2014 U.S. Dist. LEXIS 146404, *13-21 (M.D. Pa. Jan. 14, 2014).

In sum, the MWA – like the FLSA and the New York, Oregon, and Illinois statutes – is a remedial statute that would be undermined if employers and putative employers could seek indemnification for wage violations.

### B.  Counts I and II also should be dismissed to the extent they seek indemnification for attorney's fees.

The *Mode* Court also explained that S-L's indemnification claim was

improper because it contradicted the FLSA's statutory scheme of limiting the

recovery of attorney's fees to prevailing workers:

> allowing the recovery of attorneys' fees in this way would be inconsistent with the limited attorneys' fees provisions in the FLSA.  Section 216(b) of the FLSA provides, in pertinent part, that: "The court in [a collective] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). There is no comparable statutory authority for the award of attorneys' fees to a prevailing defendant.  While courts have awarded fees against plaintiffs in FLSA actions, such awards are limited to the rare circumstances, plainly not found here, where "the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Thus, permitting S-L to recover fees under a contractual indemnification provision only on the grounds that an FLSA Plaintiff was unsuccessful would be an improper end-run around the FLSA's statutory scheme.

*Mode*, 2021 U.S. Dist. LEXIS 165511, at *51-52 (internal citations omitted).

This same argument can be made with respect to the MWA, which strictly

limits the recovery of attorney's fees to prevailing plaintiffs.  *See* Mass. Gen. Laws

ch. 149, § 150 (prevailing plaintiff "shall be awarded treble damages, as liquidated

damages, for any lost wages… and shall also be awarded the costs of the litigation

and reasonable attorneys' fees").  Here, as in *Mode*, S-L's attempt to recover

attorney's fees under the auspices of indemnification and breach of contract claims

violates the MWA.

Moreover, S-L's reliance on Count II's Breach of Contract claim to recover

attorney's fees fails for the additional reason that "a litigant cannot recover counsel

fees from an adverse party unless there is express statutory authorization, a clear

agreement of the parties, or some other established exception." *Lavelle v. Koch*,

617 A.2d 319, 323 (Pa. 1992).  S-L possibly satisfy this standard because – outside

of Count I's indemnification claim – there is no DA provision addressing

attorney's fees.

### C. Count I also should be dismissed because Charleau's underlying wage lawsuit does not fall within the indemnification provision's subject matter.

Courts "must strictly construe the scope of an indemnity contract against the

party seeking indemnification." *Jacobs Constructors, Inc. v. NPS Energy Services,*

*Inc.*, 264 F.3d 365, 371 (3d Cir. 2001).  Thus, we must carefully inspect DA

Article 19B's indemnification language, which explicitly limits indemnification to

claims "arising or resulting, directly or indirectly, from: Distributor's actions,

omissions or negligence; the performance of this Agreement by Distributor; any

breach of this Agreement by Distributor; the operation of Distributor's business: or

the use or operation of Distributor's vehicles."  DA Article 19B.

The *Mode* Court explained that the workers' underlying statutory wage

claims simply do not fall within the above language:

> the basis for the asserted indemnification – that a "Member" of the [LLC]
> asserted an unsuccessful FLSA claim __ is not encompassed by the
> indemnification provision.  A claim that S-L, rather than the [LLCs],
> violated the FLSA by not paying overtime or minimum wages to Plaintiffs
> does not arise out of or result from "Distributor[s'] actions, omissions or
> negligence; the performance of [the Distributor] Agreement by [a]
> Distributor; any breach of [the Distributor] Agreement by [a] Distributor;
> the operation of [a] Distributor's business; or the use or operation of [a]

Distributor's vehicles."   Instead, Plaintiffs' claim arises out of S-L's
actions and the operation of S-L's business.

*Mode*, 2021 U.S. Dist. LEXIS 165511, at *53-54; *accord Carpenter v. Pepperidge*

*Farm, Inc.*, 2021 WL 78015, 2021 U.S. Dist. LEXIS 37337, *15-18 (E.D. Pa. Mar.

1, 2021).  This exact same reasoning brings an end to S-L's identical

indemnification claim in this litigation.

### D. Count III should be dismissed because S-L's unjust enrichment claim concern relationships that are based on the DAs.

"[T]he doctrine of unjust enrichment is unavailable where . . . the

relationship between parties is founded on a written agreement or express

contract."  *Sayles v. Allstate Insurance Co.*, 260 F. Supp. 3d 427, 450 (M.D. Pa.

2017) (internal quotations omitted); *accord Lomma v. Ohio National Life*

*Assurance Corp.*, 283 F. Supp. 3d 240, 264-65 (M.D. Pa. 2017).

The *Mode* Court explained how this rule brings an end to S-L's unjust

enrichment claim:

> S-L asserts that if the jury finds that Plaintiffs are employees rather than independent contractors then the [DAs] will be "void" and there will be no contractual relationship with the [LLCs] so the unjust enrichment claim will be viable. However, this is an inaccurate reading of the [DAs]. Those agreements state that "[a]ny [finding that there is not an independent contractor relationship between them] by any board, court of competent jurisdiction or agency shall entitle either party to immediately declare this Agreement null and void." [DA] at Article 2(A). So, rather than allegedly being "void" in the event of an adverse finding at trial, the [DAs] are merely "voidable."
>
>    This distinction is significant and determinative. Even if a Court

determines that Plaintiffs are employees rather than independent contractors that finding alone does not disturb either the existence or validity of the [DA]. Rather, each of the parties to the agreements has a contractual right, but not an obligation, to then declare the contract to be void, only at that point triggering whatever rights and obligations are attendant to their voided contract. Indeed, because it would be S-L's contractual choice to declare the contract void, even the voiding of the contract would be an act entirely subject to and deriving from the parties' rights under the contract. Accordingly, S-L could not, based on its own elections under the [DAs], create an opportunity to recover against the [LLCs] under a quasi-contractual claim. In sum, all of the parties' rights and obligations flow from their express contractual relationship, which precludes any claim of unjust enrichment between them and entitles J&M and the other [LLCs] to summary judgment on that claim.

Mode, 2021 U.S. Dist. LEXIS 165511, at *56-58.  This same reasoning applies to

S-L's identical unjust enrichment claim in this action and warrants dismissal.

### E. Count III should be dismissed because S-L's S-L fails to plead the substantive elements of unjust enrichment.

In evaluating the sufficiency of an unjust enrichment claim, "[t]he most critical inquiry is whether the enrichment is unjust, and the doctrine does not apply in all cases simply because the defendant benefitted as a result of the uncompensated actions of the plaintiff." *Austin Powder Co. v. No. 1 Contracting Corp.*, 2011 WL 1120418, 2011 U.S. Dist. LEXIS 31175, *7 (M.D. Pa. Mar. 24, 2011).

S-L's counterclaims cannot satisfy the above standard for at least four independent reasons:

**First**, the counterclaims are predicated on this Court's future finding against

S-L for violating the Charleau's statutory wage rights.  There is no other allegation of "unjust" behavior by the LLC.

Therein lies S-L's problem.  Charleau's vindication of his MWA wage rights in federal court is not "unjust."  As explained in *Cordova, supra*, an unjust enrichment claim must fail where "the alleged 'injustice' . . . is triggered by a determination that Defendant owes Plaintiffs compensation for unlawful deductions and related penalties." *Cordova*, 104 F. Supp. 3d 1134.[8]

**Second**, the DA between S-L and Charleau's LLC expressly contemplates the possibility that a "court of competent jurisdiction" might find Charleau to be S-L's employees.  *See* page 4 *supra*.  Thus, when S-L and Charleau's LLC entered into the DA, the parties appreciated the risk that Charleau might someday file suit and agreed that "voiding" the contract was the appropriate remedy for a judicial finding of employment.  The unjust enrichment doctrine does not give S-L a "do-over" just because it is unhappy with the business deal it struck with Charleau's LLC.

**Third**, S-L fails to explain how Charleau LLC has been "enriched."  S-L

---

[8]  *See also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 935 (S.D.N.Y. 2013) ("[h]aving misclassified plaintiffs and therefore breached their statutory duties as employers, defendants may not avoid liability for such duties" via unjust enrichment).

references various "rights and benefits" that the LLC purportedly has enjoyed under the DA. *See* pages 6-7 *supra*. However, these are just the "rights and benefits" that Charleau's LLC earned by performing its contractual obligations to S-L.

In this regard, *Camp v. Bimbo Bakeries USA, Inc.*, 2019 WL 1472586, [2019 U.S. Dist. LEXIS 57114](#) (D.N.H. Apr. 3, 2019), is instructive. The *Camp* plaintiffs filed suit alleging that Bimbo misclassified them as independent contractors. *See id.* at *1. In response, Bimbo asserted an unjust enrichment counterclaim. *See id.* at *1-2. The court dismissed the counterclaim. After recounting the purported "benefits" reapedby the plaintiffs, the court explained that unjust enrichment requires more than the allegation of a purportedly one-sided business deal:

> But, none of that inured to Bimbo Bakeries' detriment. Indeed, Bimbo Bakeries were also "enriched" as a result of their relationships with plaintiffs and benefited financially from plaintiffs' efforts to both advertise and sell Bimbo Bakeries' products. And, by classifying plaintiffsas independent contractors Bimbo Bakeries no doubt avoided substantialemployer tax (and perhaps insurance) obligations. That's typically how business relationships work – each side receives some benefit.
>
> The problem with Bimbo Bakeries' counterclaim is that it fails to plausibly allege how plaintiffs (if properly viewed as employees) were unjustly enriched, at the expense of Bimbo Bakeries. Nor does it plausiblyallege that plaintiffs obtained some benefit from Bimbo Bakeries that would be unjust or inequitable for them to retain if they are deemed to have been employees.

*Camp*, [2019 U.S. Dist. LEXIS 57114](#), *3-4; *accord Scovil v. FedEx Ground*

*Package System, Inc.*, 2011 WL 2968350, 2011 U.S. Dist. LEXIS 79923, *6 (D. Me. July 21, 2011).

**Fourth**, as this Court has observed, "'[c]onclusory allegations of liability are insufficient' to survive a motion to dismiss." *Collins*, 2021 U.S. Dist. LEXIS 133461, at *4. Yet, S-L's "cookie-cutter" unjust enrichment claim – which is identical to the claims asserted in the related *Marranzano*, *Marston*, and *Vrabac* actions – is entirely conclusory. For example, S-L vaguely describes the "rights and benefits" enjoyed by Charleau's LLC as including:

> the right to earn substantial revenues pursuant to the [DA] through the distribution and sale of S-L products; the right to engage in any other businesses or professions, including, but not limited to, contracting with other entities, and distributing products for other entities; the right to sell all or parts of its distribution rights and retain the revenue from such sales; and the tax benefits obtained by virtue of its independent contractor status.

Doc. 64 at ¶ 31. Yet, S-L fails to assert that Charleau's LLC has actually enjoyed any of these purported "rights and benefits." Instead, S-L just repeats *verbatim* the exact same allegations that it makes against the LLCs of *every* other worker who dares to assert a statutory wage claim against S-L. This is not sufficient to state a claim.

## IV.   CONCLUSION

For the above reasons, Charleau's LLC respectfully asks the Court to grant

this motion and dismiss the third-party complaint.

Date:  September 7, 2021

Respectfully,

Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Michelle L. Tolodziecki
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Harold L. Lichten (*pro hac vice*)
Matthew Thomson (*pro hac vice*)
Zach Rubin, Esq. (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA  02116
(617) 994-5800

Chad Hatmaker (*pro hac vice*)
J. Keith Coates (*pro hac vice*)
Woolf, McClane, Bright, Allen
   & Carpenter, PLLC
Post Office Box 900
Knoxville, TN  37901
(865) 215-1000

*For Plaintiff*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify, pursuant to Local Civil Rule 7.8(b)(2), that this brief

numbers 4,900 words.

Date:  September 7, 2021

Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491